UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JIMMY LEE NAVE, JR., | ) |
|        Petitioner, | ) |
|        v. | ) No. 2:19-cv-00051-JRS-DLP |
| WARDEN, | ) |
|        Respondent. | ) |

**Order Denying Petition for a Writ of Habeas Corpus**

In his petition for a writ of habeas corpus, petitioner Jimmy Lee Nave, Jr. challenges his 2013 Madison County conviction for kidnapping. For the reasons explained in this Order, Mr. Nave's petition for a writ of habeas corpus is **denied**, and the action is dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

## I. Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The Indiana Court of Appeals summarized Mr. Nave's offense as follows:

> On February 16, 2013, Ruth Clark, who was eighty-one years old at the time, left a shopping mall in Madison County and returned to her car in the mall parking lot. After Clark entered her car and sat in the driver's seat, a man later identified as Nave entered the back seat of her car, reached around Clark's seat, grabbed her by the face and mouth, and held a six-to-eight-inch knife to her neck. Clark was unable to move her arms due to this restraint by Nave but still attempted to call for help. Nave told her to "shut up" and ordered her to "drive." Tr. p. 31.
>
> Fortunately for Clark, Robert Derrickson, a mall employee who was in the parking lot at the time, heard Clark's muffled screams and responded. Derrickson saw Nave in Clark's car with his hand over her mouth. Derrickson went to the car and asked Nave, "what [is] going on[?]" Tr. pp. 56–57. When Nave saw Derrickson, he exited

1

> the other side of the vehicle. Nave did not immediately leave the vicinity and stood face-to-face with Derrickson briefly until he began to walk away and leave the mall area. Derrickson noticed that Nave had something dark in his hand but was unable to identify what it was. Derrickson later identified Nave as the man he had seen in Clark's car.
>
> As a result of this incident, Clark was visibly shaken. Although she initially told the police she was unhurt, she in fact had a bleeding wound on her face and later developed bruises on her face and hands.
>
> On February 22, 2013, the State charged Nave with Class A felony kidnapping and Class B felony attempted carjacking. On June 24, 2013, a bench trial was held. Nave testified and admitted that he had gotten into Clark's car, but claimed that he did so only to confront her because she had backed into his vehicle. The trial court rejected Nave's version of events and found him guilty as charged.
>
> At a sentencing hearing held on July 1, 2013, the trial court vacated the Class B felony conviction on double jeopardy grounds and sentenced Nave only on the Class A felony conviction. …. The trial court then sentenced Nave to thirty-eight years, with three years thereof suspended to probation.

*Nave v. State*, 998 N.E.2d 1001, 2013 WL 6236765, *1-2 (Ind. Ct. App. Dec. 3, 2013) ("*Nave I*").

Mr. Nave sought transfer to the Indiana Supreme Court which was denied.

Following his direct appeal, Mr. Nave filed a petition for post-conviction relief in state court. As relevant here, he asserted that both his trial and appellate counsel provided ineffective assistance of counsel in several respects. *See* dkt. 8-2 at 9; *Nave v. State*, 2018 WL 4275432, at *3-5 (Ind. Ct. App. Aug. 29, 2018) ("*Nave II*"). The trial court denied Mr. Nave's petition following a hearing, and the Indiana Court of Appeals affirmed. *Id.* at *5. The Indiana Supreme Court denied Mr. Nave's petition to transfer. Dkt. 7-9 at 11.

Mr. Nave next filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court alleging that trial counsel was ineffective for (1) failing to object to his warrantless arrest, and (2) failing to object to Robert Derrickson's in-court identification of him.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This

3

is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

### III. Discussion

Mr. Nave alleges that trial counsel rendered ineffective assistance of counsel. To succeed on a claim that trial counsel was ineffective, a petitioner must show that counsel's performance was deficient and prejudicial. *Maier v. Smith*, 912 F.3d 1064, 1070 (7th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 689−92 (1984)). Deficient performance means that counsel's actions "fell below an objective standard of reasonableness," and prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

4

The last reasoned opinion at issue here is the Indiana Court of Appeals' decision affirming the denial of Mr. Nave's petition for post-conviction relief. The Indiana Court of Appeals correctly articulated the *Strickland* standard in Mr. Nave's post-conviction memorandum decision. *Nave II*, 2018 WL 4275432 at *2. Mr. Nave complains about two aspects of trial counsel's performance. The Court will address each in turn.

i. **Probable Cause Affidavit**

Mr. Nave contends that his trial counsel provided ineffective assistance by failing to challenge the probable cause affidavit issued after his warrantless arrest. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Mr. Nave challenges two statements in the affidavit and alleges that without these statements there was no probable cause to issue the warrant.

The Indiana Court of Appeals summarized the contents of the affidavit as follows:

> [T]he probable cause affidavit stated that Ruth Clark described her assailant as an African-American male wearing "dark clothing, dark knit cap and dark jacket." She further stated the assailant left the scene by walking to the north corner of the mall. Similarly, Robert Derrickson described the suspect as an African-American male wearing "Blk [sic] cap, leather looking coat, dark pants possibly work pants." He told the officer the suspect walked north around the mall.
>
> Next, the affidavit indicates Nave arrived at Manie Vive's garage to ask for a ride. Vive described Nave's clothing to the officer and gave the officer Nave's name. The clothing was "the same described by the victim and witness." Vive told the police Nave said he had just come from the mall.
>
> Another officer went to Nave's residence and saw a "similar looking male" walk up to the home. The male identified himself as Nave's brother, Chris Nave. Chris told the officer that Nave had called him to say he was "in trouble."

*Nave II*, 2018 WL 4275432, at *3 (record citations omitted).

The Court of Appeals concluded that this information "would warrant a reasonable person

to believe that Nave was the person who attacked Clark," so trial counsel was not ineffective for not filing a motion to suppress that would not have been granted. *Id.*

The Court agrees. "To determine whether an officer had probable cause for an arrest," the reviewing court "'examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) (internal quotation marks omitted). Whether probable cause exists "depends on the totality of the circumstances." *Maryland*, 540 U.S. at 371. The Indiana Court of Appeals reasonably concluded that the information included in the affidavit supported a finding of probable cause.

Further, the Court disagrees with Mr. Nave's argument that the detective lied or presented misleading evidence in the affidavit. Dkt. 2 at 3; dkt. 11 at 3. Mr. Nave challenges the veracity of two statements: (1) "The suspect was later identified as Jimmy Lee Nave after he went to Manies [sic] Garage and asked for a ride," and (2) "Manie Vive described Nave's clothing as being the same described by the victim and witness." As the Seventh Circuit has explained:

> "A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003). We have said that a "reckless disregard for the truth" can be shown by demonstrating that the officer "entertained serious doubts as to the truth" of the statements, had "obvious reasons to doubt" their accuracy, or failed to disclose facts that he or she "knew would negate probable cause." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 723, 743 (7th Cir. 2003).

*Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012). Neither of the statements challenged by Mr. Nave were false, just incomplete. With respect to the first statement, shortly after the attack occurred, Samuel Morgan, an acquaintance of Mr. Nave's from high school, gave Mr. Nave a ride

6

to Mr. Vive's mechanic shop from the Long John Silver's where Mr. Morgan and his girlfriend, Sarah Aynes worked. Tr. 88-92. The police went to the Long John Silver's after the attack because it was adjacent to the mall, and Ms. Aynes told officers her boyfriend had just given a black male a ride. Tr. 17. Mr. Vive was also familiar with Mr. Nave from working on Mr. Nave's family's cars. Tr. 101. Mr. Nave told Mr. Vive he needed help with his car because he had hit a woman's car in the mall parking lot. Tr. 103. Mr. Vive drove by the mall, and Mr. Nave pointed out the car where the police were. Tr. 103-05. Mr. Vive told Mr. Nave he should talk to police and let the insurance company handle the accident, but he declined. Tr. 105. After Mr. Vive dropped Mr. Nave off, he received a phone call from his shop telling him the police wanted to speak with him about Mr. Nave, so he went to the police station and provided a statement. Tr. 105. The fact that the affidavit did not specify who first identified Mr. Nave by name to the police (presumably Mr. Morgan or Mr. Vive) does not make the statement a lie. The affiant did not show reckless disregard for the truth, nor did he withhold facts that would have negated a finding of probable cause. Rather, the details omitted from the affidavit but testified to at trial bolster the finding of probable cause.

Mr. Nave quibbles with the second statement— "Manie Vive described Nave's clothing as being the same described by the victim and witness"—because the affidavit did not include Mr. Vive's description of Mr. Nave's clothes. But Mr. Vive testified at trial that Mr. Nave wore a black beanie, black jacket, and black jeans, which was similar to the description of Mr. Nave's clothes that Ms. Clark and Mr. Derrickson had provided to police. Tr. 106-07. Again, the affiant did not lie, he just did not draft the affidavit with the level of clarity that Mr. Nave argues was necessary.

In summary, the Indiana Court of Appeals correctly concluded that there was enough information in the affidavit to support a finding of probable cause, and therefore trial counsel did

7

not perform deficiently for failing to challenge it. Habeas relief is not warranted on this basis.

### ii. In-Court Identification

Mr. Nave next challenges trial counsel's effectiveness for failing to object to Mr. Derrickson's in-court identification of him. Mr. Derrickson was the mall employee who approached Ms. Clark's car after he heard her muffled screams. Mr. Derrickson testified that he had gotten "a good look" at Mr. Nave after Mr. Nave exited Ms. Clark's car. Tr. 65. A detective showed Mr. Derrickson a photo line-up the day of the attack, but he did not identify any suspect. Tr. 73-74. The detective told Mr. Derrickson during that interview that the pictures in the lineup were "not the greatest" due to using an older system to print the pictures and told Mr. Derrickson that he might show him another lineup with clearer pictures later. Dkt. 8-5 at 10-11. Several days later—after Mr. Derrickson had seen a news article with Mr. Nave's name and picture—the detective went to his workplace and showed him another lineup. Tr. 68-69, 74. Mr. Derrickson selected Mr. Nave's picture in the second lineup. Tr. 66. The first photo lineup was not preserved, but Mr. Nave argues that the court must presume that he was in the first lineup and that it was only through the detective's suggestiveness that Mr. Derrickson was able to select him in the second lineup.

The Seventh Circuit has "held that a 'witness's identification violates a defendant's right to due process when the identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Lee v. Foster*, 750 F.3d 687, 691 (7th Cir. 2014) (quoting *United States v. Recendiz*, 557 F.3d 511, 524 (7th Cir. 2009)). "Due process will only prohibit evidence when it 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Perry v. New Hampshire*, 565 U.S. 228, 237) (2012)). Further, an identification procedure may be unduly suggestive yet still reliable and,

therefore, admissible. *Id.* at 692. Several factors to determine reliability should be considered:

> (1) the opportunity of the witness to observe the criminal at the time of the crime (or prior to the identification); (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the length of time between the crime and the identification.

*Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). A witness's inconsistencies are generally relevant to his credibility, not the admissibility of his testimony. *Id.*

As noted in the appellate opinion, Mr. Derrickson testified that he got a good look at Mr. Nave because Mr. Nave stood face-to-face with him outside the car before walking away. Mr. Derrickson described Mr. Nave as being about 6' and 180 pounds, and Mr. Nave is 5'11'' and 170 pounds. *Compare* dkt. 8-5 at 10 *with* dkt. 7-1 at 1. Mr. Derrickson selected Mr. Nave's picture only ten days after the crime. While he did not select a picture from the first line-up, that was explained by the detective's concern about the poor picture quality. Mr. Nave's trial counsel highlighted the fact that Mr. Derrickson identified Mr. Nave only after he saw his picture in the newspaper. Tr. 69. Weighing the reliability factors, Mr. Derrickson's identification of Mr. Nave was sufficiently reliable. If Mr. Nave's trial counsel had objected to Mr. Derrickson's in-court identification, the objection would not have been sustained. Thus, the Indiana Court of Appeals correctly recognized that trial counsel's performance could not have been deficient if the unraised objection would not have been sustained. *See Jones v.* Brown, 756 F.3d 1000, 1008-09 (7th Cir. 2014) ("If evidence admitted without objection is, in fact, admissible, then 'failing to object to that evidence cannot be a professionally 'unreasonable' action.'") (quoting *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001)).

Further, even if counsel had successfully objected to the in-court identification, Mr. Nave would have been unable to prove the prejudice prong of *Strickland*. Mr. Nave admitted to police

9

that he was in Ms. Clark's car, and he testified as such at trial. Mr. Derrickson's identification of Mr. Nave was not the evidentiary linchpin needed to convict Mr. Nave because he identified himself. Therefore, Mr. Nave cannot show a reasonable probability that suppressing Mr. Derrickson's testimony would have changed the outcome of trial. *Strickland*, 466 U.S. at 694.

In summary, the Indiana Court of Appeals' determination that the identification was admissible and therefore trial counsel did not render ineffective assistance for failing to object to it was a reasonable application of *Strickland*. Habeas relief is not warranted on this basis.

### IV. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, the prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Here, no reasonable jurist could disagree that Mr. Nave's claims are barred by 28 U.S.C. § 2254(d) or are otherwise without merit. A certificate of appealability is therefore denied.

## V. Conclusion

Mr. Nave's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**, and a certificate of appealability shall not issue. Final judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 2/12/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JIMMY LEE NAVE, JR.
232904
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov